Modesta Concepción Cosme, en su carácter de madre natural con patria potestad sobre sus hijos naturales menores reconocidos Alberto Padín Concepción y Joaquín y Carmen Padín Concepción, conocidos también por Joaquín y Carmen Concepción, demandante y apelante, *v.* Ruperto Márquez, en representación y como tutor de los menores Luis Vicente, Julio Alberto y Carmen María Quiñones Vázquez, demandado y apelado. Modesta Concepción Cosme, Etc., demandante y apelante, *v.* Demetrio Latoni Pecunia, demandado y apelado.

Núms. 7037 y 7038.—*Sometidos:* Febrero 4, 1937. *Resueltos:* Mayo 26, 1937.

*A. Casanova Prats,* abogado de la apelante; *A. Barceló, Jr.* y *Dubón & Ochoteco,* abogados de los apelados.

EL JUEZ PRESIDENTE SEÑOR DEL TORO emitió la opinión del tribunal.

La vista de estos recursos se celebró conjuntamente. Los alegatos presentados son comunes a ambos. Serán por tanto considerados en una sola opinión.

De los autos correspondientes al recurso núm. 7037, aparece que Modesta Concepción Cosme, como madre con patria potestad sobre sus hijos naturales reconocidos Alberto, Carmen y Joaquín, demandó a Ruperto Márquez como tutor de los menores Luis Vicente, Julio Alberto y Carmen María Quiñones en reclamación de daños y perjuicios.

Alegó substancialmente en su demanda enmendada que sus menores hijos eran dueños de la casa número 49 de la calle de Rafael Cordero de esta ciudad de San Juan, y que en marzo 2, 1932, Francisco Font Manzano, como su tutor, constituyó sobre ella hipoteca a favor de los menores demandados por $8,000, intereses al diez por ciento anual y $800 más para costas en caso de reclamación judicial; que en febrero 3, 1933, el tutor de los menores demandados teniendo conocimiento de que los menores demandantes estaban bajo la patria potestad de su madre natural, inició un pleito sobre ejecución de la dicha hipoteca, sin incluir como demandada a la madre natural, dirigiendo el procedimiento contra los menores representados por Font "que tenía un nombramiento nulo de tutor de los mismos"; que ordenado el requerimiento y practicado, como no se pagara la suma reclamada, el tutor pidió la venta de la finca en pública subasta; que ordenada la venta en abril 3, 1933, y anunciada la subasta, se celebró en mayo 19, 1933, compareciendo como único postor el tutor de los menores demandados adjudicándose a éstos la casa por $9,000 a cuenta de su crédito; que los menores demandados entraron en la posesión de la finca en mayo 25, 1933, después de haberse lanzado de ella a los menores demandantes y han continuado en posesión recibiendo sus rentas; que en noviembre 27, 1933, Modesta Cosme, en representa-

ción de sus hijos naturales, inició un pleito solicitando la nulidad del de ejecución de hipoteca mencionado y dicha nulidad fué decretada por la corte por sentencia de 11 de octubre de 1934, notificada a los demandados en octubre 15, 1934, y no apelada por ellos.

El hecho décimo y último de la demanda, copiado textualmente, es como sigue:

"Como consecuencia de los actos ejecutados por el demandado, para despojar a los demandantes de la finca descrita en esta demanda, y de todos los actos descritos en la misma, los demandantes perdieron las rentas de su finca durante todo el tiempo desde mayo 25 de 1933 hasta esta fecha, habiendo vivido desde entonces en medio de privaciones terribles y en una miseria espantosa, que les ha ocasionado intensos sufrimientos morales y padecimientos físicos enormes, daños y perjuicios que han sufrido los demandantes por la culpa y negligencia de los demandados y que estiman en la suma de $15,000."

La corte resolviendo por segunda vez la misma excepción previa de falta de hechos suficientes para constituir una causa de acción formulada por los demandados, declaró la demanda sin lugar con imposición de costas a los demandantes sin incluir en ellas honorarios de abogado, por sentencia de marzo 26, 1935, apelando de ella los demandantes para ante este tribunal.

Y de los autos correspondientes al recurso núm. 7038, consta que los indicados menores Alberto, Carmen y Joaquín Padín Concepción por medio de su madre natural Modesta Concepción Cosme demandaron a Demetrio Latoni Pecunia, alegando substancialmente en su demanda enmendada que eran dueños de la casa número 4 del callejón de Las Monjas y de la número 70 de la calle de San Sebastián, ambas de esta ciudad de San Juan; que en diciembre 30, 1930, Manuel García Lago en su representación como tutor testamentario, hipotecó dichas casas a favor del demandado para garantizarle $8,500 y $850 más para costas; que el demandado, teniendo conocimiento de que los menores demandantes estaban bajo la patria potestad de su madre natural, en mayo

18, 1932, ejecutó judicialmente la hipoteca, solicitando que se requiriera al entonces tutor de los menores Francisco Font Manzano, cuyo nombramiento era nulo, así como a los menores mismos, para que le satisficieran $9,860 por principal, intereses y costas, sin incluir en el procedimiento a la madre natural; que practicado el requerimiento y no pagada la suma reclamada, se solicitó la venta de las fincas y se decretó para llevarse a efecto en pública subasta en julio 20, 1932, en cuyo día se adjudicó la casa hipotecada al demandado, único postor que compareció, por $9,010; que se puso en posesión al demandado en julio 21, 1932, después de haber sido lanzados los demandantes de la dicha casa núm. 70 de la calle de San Sebastián, donde vivían, y desde entonces ha venido disfrutando de sus rentas; que en noviembre 27, 1933, Modesta Concepción, en su carácter de madre natural con patria potestad sobre sus repetidos menores hijos, radicó un pleito en la Corte de Distrito de San Juan pidiendo la nulidad de la indicada ejecución hipotecaria, pleito que se resolvió en su favor por sentencia de octubre 11, 1934, que notificada al demandado no fué por él apelada. El hecho décimo de la dicha demanda enmendada que es el último, copiado a la letra, es como sigue:

"Como consecuencia de los actos ejecutados por el demandado, para despojar a los demandantes de las fincas descritas en esta demanda, y de todos los actos descritos en la misma, los demandantes perdieron las rentas de sus fincas durante todo el tiempo desde julio 21 de 1932 hasta esta fecha, habiendo vivido desde entonces en medio de privaciones terribles y en una miseria espantosa, que les ha ocasionado intensos sufrimientos morales y padecimientos físicos enormes, daños y perjuicios que han sufrido los demandantes por la culpa y negligencia del demandado y que estiman en la suma de $15,000."

Excepcionó el demandado la demanda enmendada por falta de hechos suficientes para basar la acción ejercitada y la corte resolvió de conformidad y estimando que la demanda no era susceptible de enmendarse otra vez, dictó sentencia declarándola sin lugar, sin especial condenación de costas, en

marzo 12, 1935. No conformes los demandantes apelaron para ante este tribunal.

En el alegato presentado por los apelantes, igual en los dos casos, se señalan dos errores, el primero cometido al declararse con lugar la excepción previa y absolverse de la demanda a los demandados y el segundo al imponerse las costas a la parte actora. El segundo sólo puede referirse al recurso núm. 7037, pues la sentencia apelada en el otro se dictó sin costas.

Los fundamentos que tuvo la corte de distrito para declarar las demandas sin lugar los tomaremos de la resolución que aparece transcrita en el recurso núm. 7038. Fueron:

"Los demandantes en su memorándum manifiestan que como en la demanda se alega que en el escrito inicial del ejecutivo hipotecario, el demandado no incluyó ni a la madre de los demandantes, ni tampoco al tutor, tal falta equivale a una alegación de malicia voluntaria, que es un elemento necesario para constituir una causa de acción por daños y perjuicios, dentro de la teoría del 'Abuse of Process.' (Cita 50 C. J. pág. 614, párrafo 376). Fundamenta además su súplica, en que el precepto a considerar en este caso, no es el 169 del Reglamento de la Ley Hipotecaria, en relación con el Artículo 1255 del Código Civil (Edición de 1930) sino el Artículo 1802 de este último cuerpo legal, ya que la acción que se ejercita en este caso, es una de carácter personal y no una de naturaleza real. También argumenta que no se trata de una acción por persecución maliciosa, sino de una demanda basada en el uso abusivo de un procedimiento por medio del cual maliciosamente se causaron daños.

"No obstante, estas alegaciones de la parte demandante, se ha resuelto en esta jurisdicción, que los daños y perjuicios, consiguientes a la ejecución de una hipoteca, en un procedimiento nulo, son los que determina el Artículo 1255 del Código Civil, que dispone que declarada la nulidad de una obligación, los contratantes deben restituirse recíprocamente las cosas que hubiesen sido objeto del contrato, con sus frutos y el principal con los intereses, salvo lo dispuesto en los subsiguientes artículos del mismo cuerpo legal. Los sufrimientos morales y los padecimientos físicos no son una medida propia de daños en casos de nulidad de ejecutivo hipotecario. *Pontón* v. *Sucrs. de Huertas González,* 42 D.P.R. 529; 46 D.P.R. 789.

"Como los propios demandantes sostienen que su acción no la ejercitan dentro de la teoría de persecución maliciosa, se hace innecesario que discutamos este aspecto del problema."

Esta Corte Suprema en el caso de *Pontón* v. *Sucrs. de Huertas González,* 42 D.P.R. 529, 538, resolvió en efecto, lo que sigue:

"Por el décimo error se levanta una interesante cuestión de derecho. Se formula así: 'La Corte erró al condenar a los demandados a pagar daños y perjuicios por sufrimientos morales.'

"La corte sentenciadora dijo en su opinión:

" 'En cuanto a los daños morales, creemos que los preceptos del artículo 1803 del Código Civil vigente nos dan autoridad para conceder indemnización por los perjuicios que naturalmente resulten de los daños que se ocasionan. El precepto de la ley es terminante. El que por acción u omisión causa daño a otro, mediando culpa o negligencia, está obligado a reparar el daño causado. Tal daño tiene que surgir como una consecuencia natural del acto u omisión que le origina o lo causa. La ley ampara a toda persona que, sin un debido procedimiento, se ve privada de su propiedad, autorizándole a demandar la nulidad de una actuación judicial que lo privó a destiempo o inoportunamente, de lo que constituía su patrimonio. Si tal privación trae como consecuencia natural daños materiales y angustias y sufrimientos mentales y morales, y hay prueba de tales daños, creemos que los mismos pueden y deben ser compensados de acuerdo con los preceptos del artículo 1803 del Código Civil. Sólo así, dando una amplia interpretación a los preceptos de la ley sustantiva, pueden hallar amparo y protección todas las nuevas modalidades que surgen a la vida del derecho, por imperio de las leyes ineludibles del progreso.

" 'No puede haber duda de que la interposición del ejecutivo sumario fué un acto voluntario de la demandada. Ella fué el agente activo en un procedimiento del que los demandantes no podían defenderse. La acción, generadora de los daños, surge clara de las actuaciones de la parte demandada. Tal acción ha originado perjuicios.

" 'Tanto de naturaleza material como los que ocasionan los incruentos dolores morales que nos producen las angustias y sufrimientos mentales al vernos privados de lo nuestro, cuando se nos llama a responder de una obligación no vencida, y en un procedimiento en el que no podemos defendernos.'

"Parece conveniente agregar que en el párrafo anterior de su opinión la corte sentenciadora analizó la prueba con respecto a los daños que se alegó que se habían ocasionado en los otros bienes de los demandantes con motivo del procedimiento hipotecario, y concluyó que no había en ella elementos bastantes para concederlos.

"Hemos estudiado cuidadosamente el problema y a nuestro juicio la corte de distrito lo resolvió erróneamente. No importa que la demanda se titulara 'sobre nulidad de ejecutivo hipotecario, otros extremos y daños y perjuicios.' La acción que tiene el demandante es la que le reconoce el artículo 169 del reglamento de la Ley Hipotecaria que sujeta al ejecutante a indemnizar cuantos daños y perjuicios irrogue al deudor o a terceras personas interesadas, por malicia o negligencia en la fiel exposición de los hechos, y esos daños son los que determina el artículo 1270 del Código Civil, o sea la restitución de la cosa objeto del contrato, con sus frutos, y el precio con sus intereses, u otros de naturaleza semejante. Regular este caso por las disposiciones del artículo 1803 del Código Civil sería sacarlo de su propio centro. Véase la decisión de esta corte en *Arvelo* v. *Banco,* 29 D.P.R. 1066."

Admite la parte apelante que si lo resuelto se aplica estrictamente a sus casos, no tendría causa de acción, pero sostiene que el caso de Pontón, supra, puede distinguirse, y que la regla verdaderamente aplicable es la sentada por esta propia corte en su decisión posterior de *Díaz* v. *Distribuidores R.C.A. Víctor, Inc.,* 47 D.P.R. 562, dando vigor a lo resuelto en el caso de *Serrallés* v. *Saurí,* 44 D.P.R. 402. Sus propias palabras son:

"En el caso de *Pontón* v. *Sucrs. de Huertas González* pretendió el demandante reclamar daños y perjuicios por sufrimientos morales dentro de una acción en la cual se solicitaba la nulidad del procedimiento con arreglo al artículo 169 del reglamento de la Ley Hipotecaria y al artículo 1270 del Código Civil (Ed. 1911). O sea, se pretendió llevar una acción personal dentro de un pleito o acción de naturaleza real y como consecuencia y conjuntamente con dicha acción real.

"Y estuvo justificado este Honorable Tribunal en declarar que no se pueden reclamar daños y perjuicios por sufrimientos morales ocasionados por la nulidad de un procedimiento ejecutivo hipotecario.

"Pero un procedimiento ejecutivo hipotecario puede ser declarado nulo por una corte y tener el ejecutado el derecho a la reclamación de daños y perjuicios dentro de la teoría general de daños y perjuicios del Código Civil de que 'aquél que causa un daño viene obligado a repararlo', bien sea porque el procedimiento ejecutivo hipotecario fuera iniciado por el ejecutante maliciosamente y sin causa probable, lo cual caería dentro de la teoría de la persecución maliciosa civil, o bien sea porque el ejecutante hizo un uso ilegal de un procedimiento legal para despojar al demandado de su propiedad, lo que estaría cubierto por la teoría del 'Abuse of Process', o abuso de procedimiento. Y ninguna de estas dos teorías, ni las de la persecución maliciosa ni la del abuso del procedimiento ha sido descartada por los comentaristas al artículo 1803, por el artículo mismo o por las decisiones de este Honorable Tribunal como causa suficiente y legítima para la reclamación de daños y perjuicios contra un demandante. Tampoco las impiden los artículos 169 del Reglamento de la Ley Hipotecaria y 1270 del Código Civil.

"Por el contrario, este mismo Honorable Tribunal ha resuelto definitivamente en el caso de *Juan R. Díaz* v. *Distribuidores R. C. A. Víctor, Inc.*, 47 D.P.R. 562, que 'si bien en Puerto Rico la legislación vigente no autoriza la acción civil por persecución maliciosa como consecuencia en un pleito o procedimiento civil, sin embargo, una persona contra la cual maliciosamente se inicia un pleito civil tiene acción contra el actor sujeta a ciertas condiciones que en la demanda se alegue alguna cuestión substancial de daños y perjuicios, es decir, que existe alegación que saque el caso fuera del campo de la doctrina de *damnum absque injuria*. . . . .'

"Es verdad que nosotros sostuvimos en la corte inferior y sostenemos ahora que no se trata aquí de un caso de persecución maliciosa, sino de un caso de abuso del procedimiento, pero aun así entendemos que la teoría de este Tribunal citada arriba fortalece nuestra contención y que el caso es aplicable, sobre todo cuando la teoría es que 'una persona contra la cual maliciosamente se inicia un pleito civil. . . .', lo cual cubre también el campo del abuso del procedimiento.''

No hay, sin embargo, la necesidad de resolver la cuestión que suscita la parte apelante porque aunque tuviera razón habría siempre que concluir que sus demandas no aducen hechos suficientes para reclamar los daños morales que

reclama en exceso de los daños materiales ya reclamados en los pleitos sobre nulidad.

En las demandas lo que se alega es que los demandados sabían que los menores demandantes tenían una madre natural con patria potestad, no obstante lo cual prescindieron de ella y llevaron ante la corte a los menores representados por un tutor que tenía un nombramiento nulo. Ni siquiera se sostiene que los demandados tenían conocimiento de esa nulidad como materia actual, personal, de hecho.

No se imputa a los demandados ejecutantes en los procedimientos declarados nulos que trataron de cobrar deudas ficticias, que realizaran acto fraudulento alguno. No se alega que el dejar de incluir a la madre como demandada en dichos procedimientos obedeciera a algún plan para privar de su patrimonio a los menores. Todo lo que se trasluce es que los ejecutantes se equivocaron al considerar que el tutor Font era en verdad el legítimo representante de los menores. No hay aquí persecución maliciosa como lo reconoce la misma parte apelante, ni "abuse of process" como se desprende de la única cita que a este respecto contiene su alegato, a saber:

"La médula del acto torticero o daño consiste en el uso ilegal de un proceso legal. En otras palabras, la intención maligna debe culminar en un abuso efectivo del proceso, pervirtiéndolo para obtener un resultado cuyo efecto la ley no tuvo por mira que el proceso tuviera, como por ejemplo cuando se pervierte el proceso en su forma de ejecución. . . ." 50 C. J. 614.

Bajo cualquier aspecto que el caso se considere, esto es, bien se aplique estrictamente la doctrina del caso de Pontón, supra, ya se admita que pudieran existir casos de naturaleza excepcional que justificaran la concesión de daños por sufrimientos morales ocasionados con motivo de la tramitación de algún procedimiento ejecutivo hipotecario, habría siempre que concluir que las demandas no son suficientes.

No se cometió, pues, el primer error señalado. Tampoco el segundo. Parece que la Corte tuvo en cuenta para

imponer las costas en el caso que corresponde al recurso núm. 7037 la circunstancia de ser menores de edad los demandados. Se excluyó de ellas los honorarios de abogado que suelen generalmente ser la partida más gravosa. Hayamos acertado o no con el motivo que tuvo la corte, lo cierto es que no se ha demostrado abuso de discreción.

*Deben confirmarse las sentencias recurridas.*

Los Jueces Asociados Señores Wolf y Córdova Dávila no intervinieron.